## William W. Prout v. Delos C. Wiley.

*Infancy : Minor's deed : Disaffirmance : Delay : Statute of limitations.* The mere delay or neglect, after majority, of one who, when a minor, has executed a deed of lands, to make an actual disaffirmance of the deed by entry or conveyance, in the absence of any circumstances of equitable estoppel, will not operate as an affirmance or confirmation of the deed until the time limited by the statute of limitations for bringing an action has elapsed; the question in such case is merely one of the time within which an action may be brought.

*Evidence : Equitable estoppel.* In this case there was no evidence tending to show any circumstances of equitable estoppel, or to change the question from that of mere delay or lapse of time in disaffirming the deed.

*Minor's deed : Disaffirmance : Subsequent conveyance : Entry.* A conveyance after majority to a third person, and an entry by the grantee under such conveyance, clearly operate as a disaffirmance of the minor's deed.

*Equity pleading and practice : Condition of relief.* Whether a complainant who holds under such subsequent conveyance, in filing a bill to quiet his title against one who holds under the minor's deed, should be required as a condition of such relief to refund the consideration paid by the purchaser from the minor for such deed :—*Quaere ?*

But in this case the complainant making no objection to the allowance to defendant of the amount of such consideration, and by implication, at least, admitting the justice of such an allowance, it is made a condition to the granting of the relief sought.

*Submitted on briefs July 25.    Decided October 21.*

Appeal in Chancery from Ingham Circuit.

*Johnson & Crane,* for complainant.

*Dart & Wiley* and *Ashley Pond,* for defendant.

CHRISTIANCY, CH. J.

This was a bill to remove a cloud from the complainant's title to one hundred and sixty acres of land in Ingham county. The title, and the facts affecting it, as shown by the evidence, were as follows: Cornelius Cadwell, being then a minor, purchased the land at the United States Land Office, December 23, 1848, and on the 5th day of October, 1850, while still a minor (and only twenty years old in July of that year), sold and conveyed the land to George A. Wallace, for the consideration of one hundred

and twenty-five dollars, as stated by Cadwell, who says only one hundred dollars of it was paid, or for from one hundred and twenty-five to one hundred and fifty dollars, as stated by Wallace, who says it was all paid, by a horse and cow, and the balance in money. Shortly after the execution of the deed, in the spring of 1851, and while yet a minor, Cadwell left the state and went to California, and thence to Central America, and did not return to this state until the latter part of August, 1857.

In the mean time, Wallace, on the 28th day of October, 1850, conveyed the land to one Phœbe Ann Skidmore, who, on the 14th of September, 1853, conveyed the same to one Charles Koegel, who was in possession of the land when Cadwell returned from Central America in 1857. In November, 1857, Cadwell, then living in Washtenaw county, some eighteen or twenty miles from the land, went and saw Koegel, informed him that at the time he made the deed to Wallace he was a minor, and that the deed was not good; but offered to give him a deed for seventy-five dollars in money. Koegel offered to pay him that amount in stock, which Cadwell refused, and Koegel said he would have the money the next May. Cadwell again called upon Koegel the next May for the money; but Koegel then refused to do any thing about it, claiming that his title was good, whereupon Cadwell, as he testifies, caused a notice of ejectment to be served upon Koegel. Nothing further, however, appears then to have been done. In the winter of 1859 or 1860 Cadwell went and resided at Leroy in Ingham county, within two miles of the land, where he seems to have resided till the latter part of 1864 or the spring of 1865, when he removed to Williamston, in Ingham county, whence, in the spring of 1865, he was drafted into the army, and returned in September, 1865.

Some time between 1857 and 1865 (the exact date does not appear), Koegel died, leaving, as we infer from the evidence, a tenant in possession, who had gone in previous to his death. While Cadwell was in the army he was informed

that this tenant had left the land and the premises were vacant, and he thereupon authorized one Lewis Haviland, the son of Lewis J. Haviland, next mentioned, to take possession of the land for him; which he did, and continued in possession until June 1st, 1865, when Cadwell sold and conveyed the premises by warranty deed to Lewis J. Haviland, who took possession under his deed and remained in possession until December 17th, 1867, when he sold and conveyed the premises to complainant, who took and holds possession under his deed.

On the third day of November, 1865, some five months after Cadwell had conveyed to Haviland, and while the latter was in possession, the administrator on the estate of Koegel, in pursuance of a license from the probate court, sold the land, or the interest of the deceased therein, to the defendant Wiley, and the report of the sale by the administrator to the probate court (which was confirmed), states, among other things, that there was an adverse claim to the premises sold to said Wiley, and that another party claims to hold the same.

The amount of the improvement upon the land was small, being only about or a trifle over twenty acres, some of which was imperfectly cleared, and the buildings poor and of little value. Whatever of improvement there was upon the land seems to have been mostly made by Keogel, while Cadwell was absent in California and Central America, and if any were made after his return, they were made, so far as the case shows, after Koegel had received notice from Cadwell that he repudiated the deed, or did not intend to be bound by it. And there is no evidence in the case tending to show that Cadwell stood by, after his majority, when improvements were being made upon the land, without objections or notice, or that he was ever aware of any improvements going on upon the land. In our view, therefore, the case is disembarrassed of any question of estoppel upon this ground; and the only question in reference to the validity or effect of the minor's deed, is

whether his neglect to make an actual disaffirmance of the deed, by entry or conveyance, until the time he undertook thus to disaffirm it, did, under the circumstances of this case, operate as an affirmance or confirmation of the deed executed during his minority; for, though the question has sometimes been raised whether the conveyance to another person after becoming of age, would, without entry, operate as a disaffirmance, there was here both an actual entry and a conveyance, which clearly operated as a disaffirmance, unless the delay which had previously occurred amounted to an affirmance, and cut off the right to disaffirm.

Upon this question of the affirmance of a deed executed during minority, by mere lapse of time, or in other words, by mere silence or acquiescence for any particular period of time, after the minor has attained his majority, it is sufficient, without citing and analyzing authorities, to say that, by the great weight of authority, both English and American, such delay or acquiescence, without any affirmative act indicating an intention to affirm, or tending to mislead the grantee into a belief of such intention, or any circumstances of equitable estoppel, such as standing by and seeing improvements made or money expended, or a sale of the property to another, without asserting his claim (or some such special circumstance), will not operate as an affirmance or confirmation of the deed executed during minority, nor prevent the minor from disaffirming it and reclaiming the land at any time allowed him by the statute of limitation for bringing an action. The question, in such a case, is substantially but a question of the time within which an action may be brought; and the legislature having fixed the time which to them seemed reasonable for this purpose, it is not within the power of the judiciary to change it. But when facts exist which create an equitable estoppel, as above intimated, or some other special circumstances such as are above alluded to, so that the question ceases to be one merely of the length or lapse of time, it may perhaps be very proper to hold, as many

cases have held, that the infant should manifest his purpose to disaffirm within a reasonable time; and what should be held to be a reasonable time, might depend much upon the special circumstances of the particular case.

This distinction reconciles nearly, though not quite all of the decisions upon this subject.

In the present case, we can discover no grounds of equitable estoppel and no such special circumstances as can properly be held to change the question from that of simple delay or lapse of time in disaffirming the deed; and we must therefore hold that Cadwell had the right to disaffirm, to re-enter upon the land and to convey to Haviland; and that the complainant therefore obtained and holds the title, and is entitled to the relief he asks to remove the cloud created by the administrator's deed to the defendant.

But the complainant stands only in the place and succeeds only to the rights of Cadwell, who, while a minor, had conveyed to Wallace; and the defendant occupies the place and is entitled to the equities to which Wallace would have been entitled, had he not conveyed and Cadwell had sought to disaffirm the deed and convey the property. Neither complainant nor defendant has obtained any other rights or equities than would have existed between Cadwell and Wallace. And as the privilege of infancy is a shield for the protection of the infant, and not a weapon of attack, nor to be used as an engine for defrauding others, and he cannot, therefore, especially in a court of equity, be allowed to disaffirm and repudiate his deed and regain the property, without restoring the consideration he had received for it (there being no evidence of bad faith in Wallace in making the purchase). And as the complainant, standing in his place and clothed only with his rights, is compelled to ask the aid of the court of equity to remove the cloud upon his title, he should, I think, as a condition of that relief, consent to do equity to the other party.—*Hillyer v. Bennett,* *3 Edw. Ch., 222; Locke v. Smith, 41 N. H., 346; Strain v.*

*Wright, 7 Geo., 568; Bailey v. Barnberger, 11 B. Monroe, 113; Weed v. Beebe, 21 Vt., 495; 2 Kent's Com., 240.*

But upon this point my brethren do not concur in laying down the principle thus broadly, though my brothers Cooley and Graves concur in the result upon this point in the present case, on the ground that complainant makes no objection to the allowance to defendant of the amount of the consideration, and by implication admits its justice in the present case, while my brother Campbell thinks the principle inapplicable, even upon this ground, without the clear and express assent of complainant, in a bill like this, to quiet title.

What was the amount of the purchase price, whether one hundred and twenty-five dollars or one hundred and fifty dollars, is left uncertain by the evidence. But as part of it was paid in property and part in money, we think it safe to call it one hundred and twenty-five dollars. And though there is a discrepancy between the testimony of Cadwell, on the one side, and Wallace, on the other, whether the whole amount had been paid, the former saying there was twenty-five dollars unpaid, and the latter that the whole price was paid, there is reason to suspect that Cadwell merely set up the want of payment, as an excuse or apology for repudiating his deed; and upon this point we are inclined to believe the testimony of Wallace, that the whole consideration was paid. This one hundred and twenty-five dollars, with interest from October 5th, 1850, should therefore be refunded by the complainant to the defendant.

A decree of this court should therefore be entered affirming the decree of the court below in favor of the complainant, on condition that complainant, within sixty days from this date, pay to the defendant the said sum of one hundred and twenty-five dollars, and with interest to the day of such payment; otherwise that complainant's bill be dismissed, with costs to defendant.

The other Justices concurred.