MORGAN L. THOMPSON et al. vs. WILLIAM M. STRICKLAND et al.

1. VOIDABLE ACTS: *Confirmation thereof by acquiescence.*
  There may be a waiver of right or the confirmation of a voidable act by acquiescence. An election to abide by the act may be implied from an unreasonable delay in taking steps to set it aside. Reasonable diligence is exacted if the party elects to avoid the transaction. But to lay down any precise rule on the subject is impossible, in the nature of things; each case

must be governed by its own peculiar circumstances. Confirmation may be inferred from positive acts, or from tacit assent under circumstances not to excuse silence.

2. SAME: *Reasonable time.*

Reasonable time is no determined number of days or months, as applied to every case, like the statute of limitations, but must be determined in each case upon all the elements of it which affect that question. The character of the property has much to do in determining a reasonable time to make an election. A much longer time is allowed in cases of real estate than where the property is of fluctuating value.

3. SAME: *Statute of limitations.*

In 1859 Mary F., being about eighteen years of age, married H. In 1860 she took possession of her part of the estate. In 1861 she attained majority, and in 1866 this suit was brought. The state seceded before Mrs. H. attained majority. In 1861 suits to collect debts against persons in the military service of the state were prohibited. In August, 1861, the collection of all debts by suit was prohibited. Six months later the statute of limitations was suspended. The war closed, technically, April 2, 1866, though active hostilities ceased in the spring of 1865. *Held,* that it would do violence to reason to hold that under such circumstances as these confirmation or assent is to be inferred from the non-assertion of legal rights in a court of justice; that the policy and measures of legislation looked to a suspension of legal rights until the war ended.

4. SAME: *Case in judgment.*

T. died testate in 1848, leaving a large estate, real and personal. He provided by his will that the plantation, negroes, stock, etc., should be kept together until the youngest child should become of age or marry. S. married the eldest daughter, was appointed guardian of his wife's only brother and sister, Morgan H. and Mary F., both minors, and made partition and division of the estate by the consent of his wife and his wards. Deeds were executed, conveying the estate by the one to the other. *Held,* that this partition was a violation of the will and the law, and should not be permitted to stand unless entirely fair, and the wards are unequivocally satisfied when they have the ability to confirm.

APPEAL from the Chancery Court of *Marshall* County.

Hon. DeWITT STEARNS, Chancellor.

All the material facts in this case are fully stated in the opinion of the court.

The following are assigned for error:

1. The court erred in sustaining the demurrer of J. W. Clapp et al. to the bill of the complainants.

2. The court erred in overruling the exceptions filed by the complainants to the answer of W. M. Strickland.

3. The court erred in admitting certain testimony offered by the defendant W. M. Strickland to the admission of which. complainants filed bills of exception in the court below, which appears in the record.

4. The court erred in dismissing the bill of complainants. and in refusing the relief prayed for.

*Featherston, Harris & Watson*, for appellants :

Filed a printed brief and argument, and argued the case orally.

*Watson & Manning* and *Walter & Scruggs*, for appellees :

Filed a printed brief and argument, and argued the case orally.

SIMRALL, J., delivered the opinion of the court.

This litigation was originally instituted by Thomas H. Hudson and Mary, his wife, and Morgan H. Thompson.

The latter has ceased to have any interest in it, and it is now prosecuted by Hudson and wife.

James M. Thompson, the father of Mrs. Hudson, Mrs. Strickland, and Morgan H. Thompson, died testate in 1848, owning a large estate in lands, slaves, town property, wild lands, etc., worth quite $150,000. By the year 1852 the executor had closed his administration under the will, and in that year turned the property over to the defendant Strickland who had married the testator's eldest daughter, and had become the guardian of Mary, now Mrs. Hudson, and Morgan H.

Stickland immediately took possession of the family residence at Holly Springs, with the appurtenances and lands, and has resided there ever since. His wards, except when at school, lived with his family and were charged board.

The provisions of the testator's will which have relation to the subjects of this suit are that his plantation, negroes and stock, etc., should be kept together until the youngest child should become of age or marry, and then such child should draw its part ; second, that the testator's residence in the town of Holly Springs, with eighteen acres of land attached, and

his former residence, with about 100 acres attached, lying just east of Holly Springs, together with some wild lands in Marshall and Tippah counties, should not be sold until the youngest child became of age. The further provision is that when that event happens, then the residence and appurtenances and Compeer tract, adjoining Holly Springs, should be put up and sold to the highest bidder among his children, they alone bidding.

The gravamen of the bill of complainants is that during the minority of Mrs. Hudson and Morgan H., and whilst Strickland still retained towards them the relation of guardian, by his influence and persuasion, and without a proper comprehension of the acts, they were induced and did convey to him the family residence in Holly Springs for an inadequate consideration; also the Compeer tract; also the west one-half and the northeast one-fourth of section 8, township 5, range 1, west.

In 1857, under the same influence, as alleged, these wards, with Strickland and wife, conveyed a parcel of land to Robert H. Wall. In 1858 they were persuaded by Strickland to sign and seal a covenant to make a partition of the plantation, assigning to each a specific lot or share, and within a few months thereafter deeds of partition were made.

Strickland says that the proposition to make the partition came from Morgan H., who had recently graduated at the state university, and who desired to at once enter upon the business of planting. The preponderance of the testimony, however, is that the suggestion was Strickland's. It is shown that he drew up the agreement for partition, in which it was specified what portion of the land should be assigned to each ward and to his wife. This formal paper was signed and sealed by the parties, including his wards.

By its terms Mr. Wall was to place a valuation on each lot, and the difference should be paid. Wall made his valuation, and deeds in severalty were passed between the parties. This partition violated the testator's will and the law.

It is the case of a guardian who induces his wards to make partition on the terms which he dictates whilst that relation

subsisted, and when the wards, on account of non-age, were not competent to contract.   Through his wife he was interested.

Such serious transactions with his wards, in view of the influence he had with them and their confidence in him, should not be permitted to stand unless entirely fair, and unequivocally satisfied when the ability to confirm supervened.

In July, 1859, Mary, then about eighteen years of age, intermarried with Thomas H. Hudson.   In January, 1860, she took possession of her part of the plantation; in 1861 she attained her majority, and in 1866 this suit was brought.

There may be a waiver of right or the confirmation of a voidable act by acquiescence.   An election to abide by the act may be implied from an unreasonable delay in taking steps to set it aside.   Reasonable diligence is exacted if the party elects to avoid the transaction.   But, as properly remarked in Scott v. Freeland, 7 S. & M., 419, "to lay down any precise rule on the subject is impossible, in the nature of things.   Each case must be governed by its own peculiar circumstances."

In Twinlick Oil Co. v. Marburg, Sup. Ct. U. S. (Cent. Law Jour., vol. 3, no. 6, p. 99), the court say "that reasonable time has never been held to be any determined number of days or years as applied to every case, like the statute of limitations, but must be decided in each case upon all the elements of it which affect that question."   Confirmation may be "inferred either from positive acts, or from tacit assent under circumstances not to excuse silence."   2 Kent's Com., 238.

Whatever positive acts of ratification or silent assent and acquiescence have occurred, so as to preclude Mrs. Hudson from relief, must have taken place between the date of her majority, in 1861, and the bringing of the suit in 1866.

About five years intervened—long enough perhaps, unexplained, to construe her silence into assent, if with her knowledge Strickland was making costly and valuable improvements, and expending money upon his or his wife's part of the land. It was said by the Supreme Court, in Irwin v. Irwin, 9 Wall., 627, "that generally it has been held that mere acquiescence

will not suffice.'' But if unaccompanied with other circumstances it may be, as remaining silent for four years, and seeing the purchaser making large expenditures on the property. Wheaton *v.* East, 5 Yer., 62. In the case above cited from 3 Cent. Law Jour. it is said '' the character of the property has much to do in determining a reasonable time to make an election.'' A much longer time is allowed in cases of real estate than where the property is of fluctuating value, like shares in oil companies or other stocks.

When Mrs. Hudson attained majority, although no hostile collision had occurred between the people of this state and the United States, both parties to the great conflict which ensued were making active preparation for war. The state had already seceded, and the great business seemed to be to get ready for the conflict. A month before Mrs. Hudson became of age, 22d January, 1861, the legislature prohibited the institution or prosecution of a suit for debt against a person who should be called into active military service of the state.

In August of the same year a bill was passed suspending the collection of debts. This was followed, about six months afterwards, by an act suspending the statute of limitations. It was in evidence that during the war business was suspended at Holly Springs, and the lawyers, including Strickland, were absent in the army. Courts, circuit and chancery, were generally suspended. In 1862, 1863, and afterwards, Holly Springs and its surroundings were the scenes of active hostile operations. In 1864 the court house was burned, during the presence of a federal army, and part of the records destroyed. The probate court was occasionally held, but no suits were brought in the other courts. It would do violence to reason to affirm that, in times and circumstances such as these, confirmation or assent is to be inferred from the non-assertion of legal rights in a court of justice. The policy and the measures of legislation looked to a suspension of legal rights until the war was over. Active hostilities ceased in the spring of 1865,

by the surrender of the confederate armies east of the Mississippi river; but, technically, the war did not close until the 2d April, 1866. It took some time for the broken relations of society to reunite. It took time to look around and comprehend the situation. So much was to be done to provide for present emergencies that there was little thought or opportunity to devote to, and unravel, intricate subjects of private interests. Society was not composed, nor courts well reorganized, until the fall of 1865. Eight or nine months after that this suit was brought. We think the circumstances to which we have referred reasonably explain the delay.

It follows, therefore, that the deed made by Mrs. Hudson to Strickland, of the family residence and appurtenant lot, and of the Compeer tract, and the deed to Wall, ought to be set aside and vacated, and Mrs. Hudson be restored to her one-third interest therein as tenant in common. Strickland ought to be charged with the rent for the town residence and appurtenances, and also for the Compeer tract, so far as it has been valuable or productive to him. Mrs. Hudson would be chargeable with so much of the consideration paid by Strickland and beneficially realized for the property by her.

The lands conveyed to Wall were wild and non-productive.

It is shown that Strickland has become the purchaser, at bankrupt sale, of the interest of Morgan H. Thompson in the plantation.

The preponderance of the testimony is that Strickland, in assigning the lots to their co-tenants, secured for his wife the share considerably largest in quantity and the most valuable.

The agreement for partition was made in 1858, when Mrs. Hudson was only eighteen years of age. In 1859 Morgan H. and Strickland took possession in severalty, and made crops. Strickland controlled Mrs. Hudson's portion, until 1860, as guardian.

No other improvements were made by Strickland, on his wife's land, than some buildings for the accommodation of his

slaves, fencing, etc., such as were necessary to put the land in condition to make a separate crop upon it. That was done for the most part during Mrs. Hudson's minority.

In view of the character of the acts done, the times, and all the attending circumstances, they are not of the character to estop Mrs. Hudson from the assertion of her rights.

Strickland was a lawyer, and well knew that he had led Mrs. Hudson into a partition of the lands, and a sale of a valuable part of her patrimony, when her disability of minority would continue for three years. He, with full knowledge, assumed the risk.

The partition was voidable at the election of Mrs. Hudson, and, nothing having occurred which in equity works an estoppel, the partition should be set aside and an assignment made to Mrs. Hudson of one-third of the plantation. If, however, Strickland prefers to pay the difference in value in money, and Mrs. Hudson is willing to accept a pecuniary compensation to equalize the partition already made, then the chancellor may ascertain what amount of money will equalize the share received by Mrs. Hudson with that assigned to Mrs. Strickland —having reference to such value at the time partition was made—and decree accordingly.

It is left in so much doubt whether the west one-half of the northeast one-fourth of section 8, township 5, range 1 west, really belonged to the testator and constituted part of his real estate, or whether it was the individual property of Strickland, that the conveyance of this property by Strickland to Potts ought to stand.

The decree will be reversed, and cause remanded for further proceedings in the chancery court in accordance with this opinion.