THOMAS H. ALLEN *v.* WILLIAM F. POOLE AND WIFE.

1. INFANT'S DEED. *Election after majority.*
   The deed of an infant is not void, but only voidable; and, after attaining majority, he may, at his election, affirm or disaffirm it.

2. SAME. *Disaffirmance.*
   Acts of disaffirmance need not be as solemn as the original deed.

3. SAME. *Affirmance.*
   Affirmance is shown by positive unequivocal action, and not by mere passiveness, unless the vendee, with the infant's knowledge, is making expenditures on the property as absolute owner.

4. SAME. *Acts of affirmance and disaffirmance.*
   Entry by the late infant and acts of affirmance and disaffirmance discussed and the authorities cited.

5. INFANT'S MORTGAGE. *Subsequent deed to stranger.*
   A mortgage made during infancy may be affirmed by a conveyance after majority to a third person subject to the mortgage. But such a deed which does not refer to the mortgage is rather a disaffirmance.

6. CHANCERY SALE. *Confirmation. Notice of claim on the property.*
   A sale under a decree in chancery foreclosing a mortgage is incomplete until confirmation, prior to which the vendee is not a purchaser, and can be affected with notice of a claim on the property.

7. PRINCIPAL AND AGENT. *Notice to agent.....*
   Where an agent is the solicitor of his principal, for whose account he buys the property sold under the decree in the suit conducted by himself, the principal is affected with whatever knowledge or information his agent is chargeable.

8. LIS PENDENS. *Beginning. End.*
   *Lis pendens* begins not from the filing of the bill or issuing of the writ, but from its service, and continues until the final disposition of the suit.

9. SAME. *Notice. Character of suits embraced.*
   One who buys an estate pending a suit involving a question of title thereto will be considered a purchaser with notice, although no party to the suit. Bills to foreclose mortgages or enforce vendors' liens are within the rule.

10. SAME. *What notice of.*
    *Lis pendens* is notice of every fact averred in the pleadings, pertinent to the matter in issue or the relief sought, and of the contents of the exhibits filed and proved. *Center v. The Bank,* 22 Ala. 743, 757.

11. SAME. *How the property must be described.*
    In order that the notice may attach, the property involved in the suit must be so pointed out in the proceedings as to warn the public that they intermeddle at their peril.

12. SAME. *Reason of the doctrine.*
    The technical notice arising from *lis pendens* has its foundation in necessity; since no suit could be brought to a successful termination if alienations while it was pending could prevail.

13. VENDOR'S LIEN. *Notice. Recitals in deed. Presumption as to payment.*
    There is no presumption in favor of one claiming under the vendee that notes for the purchase-money recited in a recorded conveyance of land have been paid until barred by limitation; but he must inquire even after maturity.

14. PURCHASE OF TAX TITLE BY TENANT IN COMMON. *Rights against his co-tenants.*
    A tenant in common who buys in a tax title cannot set it up in equity as paramount to his co-tenants, but has a charge on the land as against them for reimbursement.....

15. TAX TITLE. *Presumption. Code 1871, § 1700, and similar statutes.*
    The Acts 1872, p. 11, Acts 1873, p. 91, and Code 1871, creating the *prima facie* presumption as to compliance with prerequisites of the law of forfeiture and sale, apply to sales by the tax collector to individuals or the State, not to the transmission of title from the State by the authorized officer.

16. **Charge on Land Descended.**  *To what debts it applies.*
    The statute which charges lands descended with debts means debts contracted by the intestate, not those by the personal representative in the course of administration.

17. **Case in Judgment.**  *Infant.   Notice.   Lis pendens.*
    A., by mesne conveyances, acquired title to land under a decree foreclosing a mortgage made by P., an infant, and her brothers.  B., to whom P. after majority conveyed her fifth interest, having given a trust-deed thereon to his creditors, it was sold, and the purchaser was a defendant to the foreclosure bill.   The deed to B. reciting the notes for the purchase-money, P., after the foreclosure sale and before its confirmation, filed this bill to enforce her vendor's lien.   *Held,* that the mortgage by the infant did not bind her fifth interest, either because of its execution or her acquiescence, that A. was a purchaser with notice of her equity, and that she could enforce her lien.

18. **Same.**  *Charge of debts on land of intestate.   Offset.*
    A covenant in the deed to B., allowing him a deduction from his notes for any thing he should be obliged tó pay on account of the debts of P.'s father, from whom the land descended, A. purchased a claim due the administrator from the estate of the father for transactions subsequent to his death, and another found due the guardian of his heirs on final settlement with them.   *Held,* that the claim of the administrator was neither a charge on the land nor covered by the covenant, but that A. should be allowed as an offset P.'s proportion of that due the guardian.

19. **Same.**  *Purchase of tax title by tenant in common.*
    After his purchase under the foreclosure sale, A., being tenant in common with P., holds a tax title then acquired for the benefit of his co-tenants, and is entitled only to contribution.

20. **Same.**  *Tax deed not prima facie evidence of regularity of clerk's acts.*
    Having, under Acts 1872, p. 11, Acts 1873, p. 91, purchased a tax title before he became tenant in common, A. set it up in a cross-bill as title paramount, and P., answering, denied that the clerk, in making the sale from the State, had complied with the law.   *Held,* that the deed by the clerk was not *prima facie* evidence that he had so complied, and that the absence of proof was fatal to the tax title.

APPEAL from the Chancery Court of Bolivar County.

Hon. E. STAFFORD, Chancellor.

*Nugent & McWillie,* for the appellant.

1. Mrs. Poole had not a lien on the land for the unpaid purchase-money as against Thomas H. Allen, who was a purchaser for value without notice.  *Patterson* v. *Edwards,* 29

Miss. 67; 1 S. & M. 197; 44 Miss. 508; 42 Miss. 18; 5 S. & M. 702; 6 S. & M. 286; 43 Miss. 260; *Gordon* v. *Manning*, 44 Miss. 756; *Wright* v. *Smith*, 43 Ga. 291; *Bank* v. *Delano*, 48 N. Y. 326; *Burch* v. *Carter*, 44 Ala. 115; *Wailes* v. *Cooper*, 24 Miss. 208; *Johnson* v. *Thweatt*, 18 Ala. 741; *Van Doren* v. *Robinson*, 16 N. J. Eq. 256; *Burrus* v. *Roulhac*, 2 Bush (Ky.), 39; *Mayson* v. *Payne*, Walk. (Mich.) 459; *Daughaday* v. *Paine*, 6 Minn. 443; *McRimmon* v. *Martin*, 14 Texas, 318.

2. At this late day, in a proceeding to enforce her alleged lien, she cannot attack the deed made to Trimble & Lightfoot. The mortgage was voidable only at election, in a reasonable time. *Bool* v. *May*, 17 Wend. 119; *Gillett* v. *Stanley*, 1 Hill, 121; *Eagle Ins. Co.* v. *Lent*, 6 Paige, 635; *Wheaton* v. *East*, 5 Yerger, 41; *Dearborn* v. *Eastman*, 4 N. H. 441; *Kline* v. *Beebe*, 6 Conn. 494; *Johnson* v. *Rockwell*, 12 Ind. 76; *Jenks* v. *Jenks*, 12 Iowa, 195; *Boston Bank* v. *Chamberlain*, 15 Mass. 220; 6 Paige, 635; *Hubbard* v. *Cummings*, 1 Greenl. 11; *Roberts* v. *Wiggins*, 1 N. H. 73; *Palmer* v. *Miller*, 25 Barb. 399; *Smith* v. *Bowin*, 1 Mad. 25; *Forester's Case*, 1 Sid. 41; *Hunt* v. *Peake*, 7 Cowen, 475; *Mason* v. *Denison*, 15 Wend. 64; *Cole* v. *Pennell*, 2 Rand. 174; *Slocum* v. *Hooker*, 12 Barb. 564; *Beeson* v. *Carlton*, 13 Ind. 354; *Oliver* v. *Houdlet*, 13 Mass. 239; *Whittington's Case*, 8 Coke, 42 *b*, 43 *a; Hoyle* v. *Stowe*, 2 Dev. & Bat. 320; *Roof* v. *Stafford*, 7 Cow. 179; *Holmes* v. *Blogg*, 8 Taunt. 35; *Drake* v. *Ramsay*, 5 Ohio, 252; *Bigelow* v. *Kinney*, 3 Vt. 353; *Dominick* v. *Michael*, 4 Sandf. (N. Y.) 374; *Voorhies* v. *Voorhies*, 24 Barb. 150; *Palmer* v. *Miller*, 25 Barb. 399; *Worcester* v. *Eaton*, 13 Mass. 371; *Scott* v. *Buchanan*, 11 Humph. 468; 21 Iowa, 585; 30 Barb. 641; 1 Dana, 145; *Emmons* v. *Murray*, 16 N. H. 385; 3 Halst. Eq. (N. J.) 500; 5 Yerger, 41; 2 Cal. 469.

3. The appellant, a *bona fide* purchaser from the vendee at the sale under the Trimble & Lightfoot mortgage, without notice of Mrs. Poole's minority, will, at all events, be protected. 1 Story Eq. Jur. §§ 64 *c*, 108, 381, 411, 416, 434, 436, 1502; *Hill* v. *Anderson*, 5 S. & M. 216, 224; *Schwartz* v. *Saunders*, 46 Ill. 18; *Connolly* v. *Branstler*, 3 Bush, 702; *Wright* v. *Arnold*, 14 B. Mon. 638; *Davis* v. *Tingle*, 8 B. Mon.

539; *Jones* v. *Kearney*, 1 Dru. & War. 134; *Vaughn* v. *Van-
derstegen*, 2 Drewry, 363; *Wright* v. *Leonard*, 8 Jur. N. S.
415; *In re Lush*, L. R. 4 Ch. App. 591; *Drake* v. *Glover*, 30
Ala. 382; *McCullough* v. *Wilson*, 21 Penn. St. 436; *Parmele* v.
*McGinty*, 52 Miss. 475; *Kitchen* v. *Lee*, 11 Paige, 107; *Badger*
v. *Phinney*, 15 Mass. 359; *Roof* v. *Stafford*, 7 Cow. 179; *Farr*
v. *Sumner*, 12 Vt. 28; 7 Ga. 568; 41 N. H. 346; 21 Vt. 495;
11 B. Mon. 113; 8 Texas, 397.

4. After his purchase of the property, having bought and
taken assignments from Pearcefield, guardian and adminis-
trator, of the balances found to be due him on his final settle-
ments, Allen was entitled to payment from Emily Poole of her
proportion of those balances, under the covenant in the deed
to Braswell. These decrees on final settlement cannot be set
aside in a collateral proceeding. *Wall* v. *Wall*, 28 Miss. 409;
*Torrence* v. *Kerr*, 27 Miss. 786; *Stubblefield* v. *McRaven*,
5 S. & M. 130; *Searles* v. *Scott*, 14 S. & M. 94.

5. The counsel also filed an elaborate printed brief on the
value and effect of the tax titles set up by Allen, citing Black-
well on Tax Titles, p. 79 and notes 2, *a*, and p. 547; Journal
of Constitutional Convention of 1868, pp. 356, 529, 530; Con-
stitution, art. 12, § 8; *Railroad* v. *Pennsylvania*, 15 Wall. 319;
*Catlin* v. *Hull*, 21 Vt. 152; *Duer* v. *Small*, 4 Blatch. 263; *Smith*
v. *Cleveland*, 17 Wis. 573; *Allen* v. *Armstrong*, 16 Iowa, 508;
Revenue Law 1870 (Acts 1870, p. 36), § 19; Code 1857, c. 3,
§ 3, art. 12, p. 74; *Atkins* v. *Hinman*, 2 Gilman, 449; *Gwynne*
v. *Neiswanger*, 18 Ohio, 400; *Dunlap* v. *Gallatin*, 15 Ill. 7;
Cooley on Taxation, 305, 345, *et seq.*; *Moss* v. *Shear*, 25 Cal.
38; *Bowman* v. *Cockrill*, 6 Kansas, 311; 30 Mich. 118; *David-
son* v. *Wallace*, 53 Miss. 475; *Coy* v. *Gibson*, 27 Penn. St. 180.

*W. L. Nugent*, on the same side, argued the case orally.

*F. A. Montgomery*, for the appellees.

1. Both Brooks & Co. and the defendant Thomas H. Allen
had actual notice of Mrs. Poole's claim, and of her demand to
have the mortgage to Trimble & Lightfoot set aside, because
she was an infant when it was made, before either of them
acquired any legal title or vested interest in the land.

2. They certainly had constructive notice that E. J. Bras-
well had given in payment of the land his two notes, due

April 5, 1871, and 1872, because the deed was on record reciting these notes and describing them, and there was nothing to show that they had ever been paid. *Parker* v. *Foy*, 43 Miss. 260.

3. To avoid these facts, it is pretended that Allen bought from Brooks & Co., on the 30th of June, 1873, and before Emily Poole's bill was filed. Even if this were true, it would not be a good defence, because no one but a purchaser of the *legal title* can claim to be a purchaser for a valuable consideration without notice. *Wailes* v. *Cooper*, 24 Miss. 208 ; *Walton* v. *Hargroves*, 42 Miss. 18 ; *Perkins* v. *Swank*, 43 Miss. 349. And the legal title must be vested by a completed conveyance. *Kilcrease* v. *Lum*, 36 Miss. 569 ; *Parker* v. *Foy*, *ubi supra*.

4. But it is not true that Allen can claim to have become the purchaser of the one-fifth interest which Emily Poole seeks to subject to her vendor's lien, except under the deed of Charles Scott, and the deed of Brooks & Co., made nearly three months after her bill had been filed.

5. It is also clear that neither Allen nor Brooks & Co. could have acquired any title to the one-fifth interest of Emily Poole in the land said to have been mortgaged to Trimble & Lightfoot, because, as to her, the whole proceeding in the case of *Brooks & Co.* v. *John Noble et al.* was *coram non judice* and void.

6. Nor has Allen, as owner of the decretal orders in favor of Pearcefield as administrator and guardian, the right to have that interest sold, subject to her *pro rata* share of those debts. The administrator could not sell the lands except for debts created by the deceased. *Hollman* v. *Bennett*, 44 Miss. 322 ; *Hagan* v. *Barksdale*, 44 Miss. 186. His assignee does not stand in a better position.

7. There is a claim for taxes and under tax titles. The decree fixes the *pro rata* to be paid on account of these taxes out of the first proceeds of the sale of the land. This is all Allen can claim.

8. The provision in the deed to Braswell amounts to nothing, since it has been shown that the land was not liable, and nothing was paid.

*T. J. Wharton*, on the same side, argued the case orally.

*T. J. & F. A. R. Wharton*, on the same side, filed two elaborate written arguments in reply, one to the written and the other to the printed brief of opposing counsel, in which they contended —

1. That Allen was affected with notice, citing 39 Miss. 805; 31 Miss. 324; 9 S. & M. 167; *Parker* v. *Foy*, 43 Miss. 260; *McLeod* v. *First National Bank*, 42 Miss. 99; *Haggatt* v. *Wade*, 10 S. & M. 143; *Gordon* v. *Manning*, 44 Miss. 756; that the recitals in the deed to Braswell were notice that the purchase-money was not paid, and that Allen bought *pending* the foreclosure suit; that Mrs. Poole had never affirmed the mortgage, but, by her deed to Braswell, had disaffirmed it; that the balances due on the administrator's and guardian's accounts could not be brought under the stipulation in the deed to Braswell; and that it was unnecessary to discuss the constitutional questions involved in the tax titles, because they were plainly void for want of proof of conformity with the statute law. If valid, the title purchased, after notice, inured to the benefit of all the parties. *McLaughlin* v. *Green*, 48 Miss. 209; Blackwell on Tax Titles, 400.

2. Counsel then proceeded with an elaborate argument on the nature and value of Allen's tax titles, citing Constitution, art. 12, § 8; *Griffin* v. *Mixon*, 38 Miss. 424; *Hampton* v. *Rouse*, 22 Wall. 263; 4 S. & M. 628; 4 Blackf. 70, 494; 7 Wis. 53; 15 Ohio, 134; Blackwell on Tax Titles, c. 3.

SIMRALL, C. J., delivered the opinion of the court.

This was a bill brought by Emily Poole and her husband, to enforce the vendor's lien on land, which had come by mesne conveyances from her vendee to the plaintiff in error, Thomas H. Allen, who claims title to one-fifth of the property by mesne conveyances, which go back to the purchaser under the decree of foreclosure of the mortgage executed by Mrs. Poole to Trimble & Lightfoot. If that mortgage is valid, then Allen has become invested with the entire estate in the lands on which Mrs. Poole asserts the vendor's lien.

In 1868, Mrs. Poole, with two of her brothers, mortgaged their interests in the lands descended to them from their father

Aaron Noble. At the date of the mortgage she was a minor. Two years after this, April 5, 1870, Mrs. Poole and her husband sold and conveyed her undivided one-fifth interest in the lands to E. J. Braswell, for the consideration of $4,500, part of which sum is represented by two notes of Braswell for $1,500 each; one due one year, the other two years, after date. In September, 1873, Mrs. Poole and her husband brought her bill in chancery, asserting a vendor's equity on the land sold to Braswell, for the payment of these two notes.

That relief is resisted by Thomas H. Allen on several grounds. First, that the mortgage executed by Mrs. Poole to Trimble & Lightfoot was a valid incumbrance, because of her acquiescence in it after she attained majority; and, secondly, because he is a *bona fide* purchaser for value, without notice of Mrs. Poole's equity; and, thirdly, because he holds by assignment debts against Mrs. Poole, which he pleads as an offset to her demand.

In 1871, Braswell conveyed the same land purchased from Mrs. Poole in trust to secure an indebtedness to Sutton, Powell & Huey, and it was afterwards sold by a substituted trustee to one Powell. Powell was made a defendant to the foreclosure suit brought by Brooks & Co., assignees of Trimble & Lightfoot. It is charged in the bill, and admitted in the answer of Allen, that Mrs. Poole was not a party to that suit.

Whatever doubts may once have been entertained, it is now well settled that the deed of an infant is not void, but only voidable. *Irvine* v. *Irvine*, 9 Wall. 617, 625; *Thompson* v. *Strickland*, 52 Miss. 574. It is in the election of the infant, after attaining majority, to affirm or disaffirm the act. Something must be done which expresses the purpose of the grantor to abide by the conveyance; mere acquiescence or passiveness will not have that effect, unless the vendee, with the knowledge of the infant, is making such expenditures on the property as he would not make, unless absolute owner, as in the case of *Wheaton* v. *East*, 5 Yerg. 41, 62. There, after his majority, the vendor was often in the neighborhood of the property, and saw the purchaser making valuable and costly improvements on the lot, without expressing a disaffirmance.

This, with other conduct, was held sufficient to warrant the conclusion of an affirmance.

There is a distinction between the nature of acts of affirmance and disaffirmance. Those of the latter character need not be as solemn as the original deed. All the authorities agree that an entry will avoid the deed. Some hold that a deed to a different grantee is sufficient without entry. In *Jackson* v. *Carpenter*, 11 Johns. 539, the intimation was quite distinct that entry was not necessary. It was said that an ejectment could be brought without that ceremony.

The technical value of an actual entry has in this country but little application to our system of conveyancing by deed of bargain and sale, which has been substituted for the common-law assurance of feoffment and livery of seisin. If an infant made a feoffment and livery in the presence of the pais then present, it is presumed the freeholders would have prevented it if they had perceived the nonage; therefore, when he disaffirmed it, he *entered* on the premises, which was an act of equal notoriety. Bacon Abr. tit. Infancy and Age, I, 5, 7. If, after majority, the lands are granted by deed to a different person, it would seem that the adult had performed an act of equal notoriety and solemnity as his deed executed during minority, and it ought, therefore, to be accepted as a positive disaffirmance of the latter. Such was the conclusion of the court in the case last cited.

If an infant makes a mortgage, and in a subsequent deed, after attaining majority, conveys the land subject to the mortgage, the second deed will confirm the mortgage. *Boston Bank* v. *Chamberlin*, 15 Mass. 220. The voidable deed may be confirmed by a recital in the subsequent deed, with a design to ratify. *Phillips* v. *Green*, 5 Monroe, 344. The principle is, there must be some positive unequivocal act or conduct of the adult manifesting an affirmance of the voidable act. A clause in a will directing the payment of all just debts does not impose on the executor liability for the testator's note made during minority. *Smith* v. *Mayo*, 9 Mass. 62. See also *Upshaw* v. *Gibson*, 53 Miss. 341.

No positive act of confirmation has been shown, nor is there allusion to the mortgage in the deed of Mrs. Poole to Bras-

well. The absolute conveyance to him, after majority, is rather a disaffirmance of the mortgage.

Did Allen have notice of Emily Poole's lien at the date of his purchase?

The conveyance of Mrs. Poole and her husband to Braswell is dated April 5, 1870, and was recorded the 20th of the same month. Braswell's deed of trust for his creditors, Sutton, Powell & Huey, was executed and recorded March 4, 1871, before either of his notes to Mrs. Poole had matured; which notes are recited in her deed to him. It has not been controverted that the registration of Mrs. Poole's deed imparted notice to Sutton, Powell & Huey that the purchase-money from Braswell to Mrs. Poole, as represented by the notes of Braswell, was unpaid. Brooks & Co., the assignees of Trimble & Lightfoot, filed their bill to foreclose the mortgage executed by John and Marcellus Noble and Mrs. Poole on Dec. 13, 1872. Final decree on *pro confesso*, taken against John and Marcellus Noble and Robert Powell, was passed on April 23, 1873. These were the only defendants to the suit. Charles Scott, the solicitor in that suit for Brooks & Co., bought the property under the decree, June 11, 1873, for their account. The sale, however, was not confirmed until Oct. 23, 1873, nearly two months after Mrs. Poole had filed her bill, and had actually caused Scott to be served with process as a defendant thereto. Until confirmation the sale is incomplete; that act adjudges the vendee to be the purchaser. Before, therefore, Scott became a purchaser under the foreclosure decree, he had notice of Emily Poole's claim on the property.

On the 18th of the following November, Scott conveyed to Allen; and on the 29th of the month, the members composing the firm of Brooks & Co. also conveyed. Scott sustained such relation to Brooks & Co., that whatever information he had, or whatever knowledge he was chargeable with, they were affected by. Allen became purchaser after Mrs. Poole had brought her suit to enforce her equity on the land against the heirs of Braswell, who had died, and Scott, who had purchased under the foreclosure decree.

Was Allen a purchaser *pendente lite*, and, if so, what are the consequences?

A *lis pendens* begins from the service of the subpœna, and not from the filing of the bill or issuance of the writ. *Allen* v. *Mandaville*, 26 Miss. 397, 399; *Murray* v. *Ballou*, 1 Johns. Ch. 566, 576; 2 Sugden on Vendors (7th Am. ed.), 544. If a person purchase an estate pending a suit involving a question of title to it, he will be considered a purchaser with notice, although he was not a party to the suit. Newland on Contracts, 506. The *lis pendens* continues until the final disposition of the suit. Sugden on Vendors, 281, 285. A bill to foreclose a mortgage on the premises is a suit involving the title within the rule. *Chaudron* v. *Magee*, 8 Ala. 570. Equally so must be a suit asserting the vendor's lien. *Lis pendens* is, in law, notice of every fact averred in the pleadings pertinent to the matter in issue or the relief sought, and of the contents of exhibits filed and proved. *Center* v. *The Bank*, 22 Ala. 743, 757. But, in order that the notice may attach, the property involved in the suit must be so pointed out in the proceedings as to warn the public that they intermeddle at their peril. *Miller* v. *Sherry*, 2 Wall. 237; *Green* v. *Slayter*, 4 Johns. Ch. 38; Sugden on Vendors, 544. At the time Allen bought the property from Scott, the solicitor and agent of Brooks & Co., Emily Poole had filed her bill, and had obtained service of summons on Scott. There was a *lis pendens*, and he was chargeable with notice of the character and extent of Mrs. Poole's claim on the land, — of every thing which the pleadings and exhibits set forth. The technical notice arising from the *lis pendens* has its foundation in necessity; "for it would be impossible for any suit to be brought to a successful termination if alienations pending the suit could prevail."

But, aside from this, we think that inasmuch as Mrs. Poole's deed recited that notes were given by Braswell for the purchase-money, a person taking title through or under Braswell was bound to inquire whether the notes had been paid or not. The law does not raise the presumption in favor of a purchaser that they were paid at maturity. The purchaser, therefore, who takes the title without inquiry, assumes the risk of their non-payment. The presumption does not arise that the lien has been extinguished until the evidence of the debt has been barred by the Statute of Limitations. *Avent* v. *McCorkle*, 45 Miss. 221.

Allen, by his purchase from Scott, acquired the two-fifths interest in the lands descended to the children of Aaron Noble, and thereby became a tenant in common with the other heirs, and the vendees of any of them. The extinguishment of the tax title, by conveyances to himself, would be esteemed to have been done for the common benefit of the tenants in common; and, being an expenditure of money for the benefit of the estate and to disincumber the title, would constitute a charge on the property for his reimbursement. But he would not be permitted in equity to set up such title in opposition to his co-tenants, and as paramount. Right is meted out to him when his co-tenants of the estate refund to him their aliquot portions of the money expended. That allowance was made in the decree to him. A tenant who relieves the estate of the incumbrance of taxes has a charge upon the land itself as against his co-tenants for reimbursement. *Davidson* v. *Wallace*, 53 Miss. 475.

But it is also said that part of the lands were acquired by the defendant Allen, under tax sale, before he became a purchaser of Scott and Brooks & Co., and two of the five heirs of Aaron Noble, deceased, Edward and John, who conveyed to him their undivided one-fifth interests, in December, 1873; and that he has, therefore, a right to set up that title as paramount to that asserted by Mrs. Poole. The allegation of his cross-bill on that subject is, "That a large portion of said lands was, on the fifth day of August, A.D. 1873, sold for the non-payment of State and county taxes, by John N. Leas, circuit clerk of said Bolivar County, by virtue of authority in him vested by the laws of said State; and C. T. Christmas and W. H. Mathis purchased and received from said Leas a deed thereof. And afterwards the defendant purchased said tax title from the two last-named grantees, . . . and they gave him a deed therefor, which has been duly recorded." "Respondent has also been forced to pay other back taxes, for which he will file an account." The specific prayer is that the complainant's title may be declared perfect. It is not averred what lands were sold to the State and by the clerk to Christmas and Mathis, otherwise than by the words, a "large portion of said lands."

The fifth section of the act of 1872, " to quiet tax titles, and increase the revenue of the State," p. 11, declares that the deed of the clerk " shall be *prima facie* evidence that all the prerequisites of the law of *forfeiture and sale* for non-payment of taxes have been strictly complied with." It is quite manifest that this statutory presumption applies alone to the acquisition of title by the State as purchaser at the tax collector's sale.

But this fifth section, and the supplementary and amendatory act of 1873, pp. 91–93, §§ 1 and 5, require the clerks to do certain acts before he can make a sale. First, he must advertise for two months, by publication once a week in a newspaper, notifying owners to come forward and redeem, which must be completed at least one month before the expiration of the time allowed for redemption. Act 1873, § 1. By the fifth section of the same act the clerk is required, after the expiration of the time for redemption, to sell the lands thus acquired by the State " at public outcry to the highest bidder for cash," in the manner provided by law for the sale of lands by sheriffs and tax collectors, for taxes.

The statute does not raise any presumption whatever in favor of the sale and conveyance by the clerk as to the performance of the acts enjoined upon him. His deed to a purchaser is *prima facie* evidence that the sale to the State was valid ; but the statute does not make it presumptive evidence that he made the two months' publications to parties interested to redeem, or that he gave the prescribed notice of his own sales. The answer to the cross-bill imposed on Allen the necessity of establishing, by evidence, the completeness of the title which he acquired. The clerk's deed gave him the benefit of the presumption that the State had title. The answer of Mrs. Poole may, under the statute, be considered as admitting that the State purchased at the tax collector's sale. But it devolved on Allen the *onus* of proof that the clerk had complied with the law, in those particulars prescribed, anterior to his sale. In dealing with the land, the clerk exerted a strictly statutory power, which he must have strictly pursued in order to transmit the title to Christmas and Mathis. The fatal defect in the respondent's title is the want of evidence that he had

complied with the law. The acts of 1872 and 1873, as well as the provision of the Revised Code as to the presumptions in favor of the title, apply to sales made by the sheriff and tax collector to individuals or the State, and not to the transmission of title from the State by the person or officer thereto authorized. Code 1871, § 1700.

It is also claimed in the cross-bill that the complainant therein has become assignee of the balance due Pearcefield as administrator of Aaron Noble, and that such balance constitutes a debt against the estate, for which the real estate descended should be sold ; and he prays for that kind of relief. The statute makes the land liable for the debts of the intestate. Similar statutes in other States have been construed as meaning debts incurred and contracted by the intestate, and not those created by the personal representative in the course of administration. That construction has been adopted in this State.

But it is further asserted in the cross-bill that the defendant Allen should be allowed to set off one-fifth of that balance against Mrs. Poole's claim, because of a stipulation in her deed to Braswell. That covenant allows Braswell a deduction from his notes for any thing he may be obliged to pay on account of the debts of Aaron Noble, deceased ; and, that he may not be embarrassed in that right, Mrs. Poole agrees to hold the notes. The motive of such provision in the deed was to protect Braswell against the contingency of the loss of the land, or any part of it, by a sale for the benefit of such creditors, or for reimbursement of any money he might pay the creditors, in exoneration of the land. But Braswell expended nothing on that account, and there has been no breach of the covenant.

The balance on the administration account stands on a different footing from the settlement of the guardian's account. The lands in the hands of the heirs cannot be disturbed, except for the " creditors " of the intestate. This balance arose subsequent to the death of the intestate, and out of subsequent transactions, as it seems. There was no error in the decision of the Chancellor on this branch of the case.

Allen also claims one-fourth of the balance due to Pearcefield from his four wards, John, Marcellus, Edward and Emily, children of Aaron Noble, deceased, on his final settlement

with them. This indebtedness, $4,157.34, was assigned to him by Pearcefield. It is an admitted fact in the cause that such was the balance, and that Allen is assignee for value paid to Pearcefield. We see no reason why Allen should not be allowed one-fourth of this sum as an offset against Emily Poole. Mrs. Poole's part of the sum due the guardian would be $1,039.33, one-fourth of the entire sum of $4,157.34.

*Decree reversed, and decree in this court.*