EMILY S. BINGHAM v. W. H. BARLEY ET AL.

(Case No. 2735.)

1. DISAFFIRMANCE OF CONTRACT — MINORITY.— In order to maintain
   a suit for the recovery of land conveyed by the plaintiff during his
   minority, he must tender back the consideration received.
2. MINORITY — DEED.— One who, after arriving at the age of twenty-
   one years, would avoid his deed to land made during minority, must
   do so within a reasonable time.
3. SAME.— His silence or acquiescence beyond a reasonable time will
   conclude his right to disaffirm his deed.
4. SAME.— What is a reasonable time is such a period as, in view of all
   the attending facts, would rebut any presumption of an intended
   disaffirmance.  The length of time, though less than the period of
   limitation for the recovery of lands, may as effectually prove his
   affirmance or ratification, in connection with the circumstances of
   the case, as his express acts or declarations to that effect.

APPEAL from Collin.    Tried below before the Hon.
W. H. Andrews.

Suit in trespass to try title, brought by plaintiff to re-
cover of the defendant Barley a portion of the Mary
Scott survey.

The heirs of Mary Scott, Martha, with her husband,
Malcolm Johnson, Sarah Scott and Elbert Scott, on Sep-
tember 26, 1855, sold the land in controversy, and con-
veyed it to Geo. H. Pegues, reciting the consideration
paid as $400.    At that time Elbert Scott was a minor.

On the 23d of December, 1863, Pegues sold and con-
veyed the same land to Wm. H. Brown, who, on January
7, 1864, sold and conveyed it to the defendant Barley.

Elbert Scott became of age somewhere about the year
1861.

On the 10th of April, 1872, for the consideration of
$250, he sold and conveyed to Emily Prewit, now Bing-
ham, the plaintiff, all his right, title and claim to the
land, who on the 17th of September, 1872, brought this
suit to recover it.

The case was submitted to a jury, who found a verdict for the defendants, and judgment was rendered thereon, from which this appeal was prosecuted.

There was some conflict in the testimony, but there was testimony to the effect that, when the sale was made to Pegues, Elbert Scott was then fifteen or seventeen years old; was well grown, some five feet, eight or nine inches in height, and weighing about one hundred and forty-five pounds, and had some beard; that the consideration paid was a large bay horse, a yoke of oxen and a wagon; that Elbert Scott took the horse off when the trade was made; that he was hired by the witness the next spring to break land with two yoke of oxen, and was then a man grown. There was testimony also of Scott's declarations, that Pegues had paid him for the land, and he did not intend to sue him or try to get it.

On the other hand, Elbert Scott himself said he did not remember making these statements; that he never agreed to surrender his interest to Pegues; that he was at the trial thirty-two years old; that the property was received on the sale of the land by Johnson; that he never received anything; that in the fall of that year the family moved out to Johnson county, and after they got there Johnson traded the horse off for another, sold the oxen and wagon, and left the country. The family returned then to Collin county.

The charge of the judge to the jury embraced substantially these propositions:

1. That if Elbert Scott sold and conveyed the land to Pegues during his minority, and received the purchase money, in order for him, or the person claiming under him, to avoid the contract, he must have within a reasonable time after arriving of age offered to restore the purchase money or property and disaffirm the contract.

2. That silence after he arrived of age beyond what would be a reasonable time, and failing to offer to restore

the property and disaffirm the contract, would be equivalent to a ratification of the sale; and unless he, within such reasonable time, by such offer and by some act or declaration of his, disaffirmed the contract, the jury should find for the defendant.

3. ' That where no consideration was received by the minor, it would not be necessary for him to return anything upon a disaffirmance by him of the contract.

4. In determining what is a reasonable time for the disaffirmance of the contract, you will take into consideration all the circumstances surrounding the party, such as his pecuniary condition and the conduct of the party claiming under such contract.

5. If Pegues, by his words or acts, gave Elbert Scott cause to believe that he claimed no title under the deed, that would excuse him for a delay in disaffirmance of the contract.

*Craig & Garnett*, for appellants.

I. We have been unable to find any rule of law which requires that the minor shall offer to return the property before he will be permitted to do the act in disaffirmance. It strikes us that the subsequent purchaser who acquires all the rights of the minor would have the same right to restore the purchase money; or that the minor, after arriving at majority, might first reconvey the land and then restore the purchase money.

II. In some of the commentaries on elementary law where the doctrine of infancy is taught in a general way, the proposition may be found loosely stated that an infant may, within a reasonable time after attaining majority, disaffirm his voidable contracts; or that the act of disaffirmance should be within a reasonable time; without informing the reader as to what is a reasonable time, or giving any rule by which it may be ascertained. The courts of the several states, where the subject is not con-

trolled by legislative enactments, have decided that the statute of limitations is the measure of what is a reasonable time.  Later writers who direct their attention specially to the law of infancy, cite the adjudications of the courts with approval and announce it as the settled rule of American law.  We refer to the authorities for a better argument than any we could make on the propriety and justness of the rule.  See Drake's Lessees v. Ramsey, 5 Ohio, 251; 1 Am. Lead. Cas., 4th ed., 256; Met. Contr., 60, 61, and cases cited; Tucker v. Moreland, 10 Pet., 58; Boody v. McKinney, 23 Me., 517; Jackson v. Burchin, 14 Johns., 124; Urban v. Grimes, 2 Grant, 96; Vaughan v. Parr, 20 Ark., 600; Voorhies v. Voorhies, 24 Barb., 150; Ware v. Brush, 1 McLean, 533; Moore v. Abernethy, 7 Blackf., 442; Cole v. Pennoyer, 14 Ill., 158. See also Tyler on Inf. and Cov., p. 67, where it is said that in England it has been held that an infant must give notice of disaffirmance in a reasonable time after coming of age.  "But by the authorities in this country, it would seem ordinarily that a conveyance of real estate by an infant may be disaffirmed at any time, so long as an action of ejectment is not barred by the statute of limitations."  In Schouler's Dom. Rel., 584–5, a Connecticut decision is referred to on reasonable time, and it is said that similar *dicta* may be found in other "courts.  But there seems to be no doubt upon the decided cases that mere acquiescence is no confirmation of a sale of lands unless it has been prolonged for the statutory period of limitation.  And that an avoidance may be made at any time before the statute has barred an entry."

*Throckmorton & Brown*, for appellee.

QUINAN, J. COM. APP.— The principal question raised by the assignments of error, and indeed the only question discussed in the briefs of the counsel for the parties in this court, is the correctness of the charges of the court.

On the part of the appellant it is contended that they do not properly state the law of the case, and he insists:

1. That, where a minor conveys land by deed, it is not necessary on his coming of age to offer to restore the consideration received, in order to a disaffirmance of the contract and a recovery back of the land, but that his reconveyance is a sufficient disaffirmance.

2. That no mere silence or acquiescence for a time short of the period of limitation will bar his right.

The appellant's counsel cites numerous authorities in support of these propositions, and indeed it may be admitted that perhaps the weight of authority is that way. See Wait's Actions and Defenses, title "Infancy," sec. 8, and numerous cases cited.

But we believe that the decisions of our own court settle the rule as to this first proposition clearly the other way, and, to our thinking, upon sounder principles.

In Cummings v. Powell, 8 Tex., 92, speaking of the propriety of an offer to return the purchase money in this sort of case, where it is sought to rescind the sale, Mr. Justice Lipscomb says: "There was no offer on the part of the plaintiffs to restore the purchase money which they had received from the defendant on the sale. This is the rule under the laws of Spain, and it has received the sanction of the courts of some of the states eminent for their wisdom and authority. It is characterized by honesty, and enforces rectitude of conduct in transactions between individuals, and as a general rule it will be recognized and enforced by this court."

This case is cited and approved by Ch. J. Hemphill in Kilgore v. Jordan, 17 Tex., 355, and additional cases referred to.

And in Stuart v. Baker, 17 Tex., 421, the court say, "Whatever the conflict may have been in the other courts as to the legal effect of a minor's deed, the doctrine is well and firmly settled in this court, that such deed is not void

but only voidable; . . . it is valid until the infant has avoided it by disaffirming it after arriving at majority; that it is indispensable to the disaffirmance that the consideration of money for property should be tendered to the purchaser."

In that case the minor after arriving at age had made a deed of the property which it was insisted was a disaffirmance, but the court held, that "had it gone to show an intention to disaffirm the sale without showing a tender of the purchase money, it would not have been sufficient to effect the disaffirmance.

These decisions, it would seem, abundantly sustain the charge of the court upon this point. There doubtless may be exceptions to this general rule, but this case is not one.

The appellant's second proposition, that mere silence or acquiescence for a period of time short of that which would by the law of limitations bar his right to recover the land, will not affect his right to avoid his deed, presents a question of more difficulty. Undoubtedly the rule in regard to the minor's right to disaffirm has been often stated in that way, and it is said to be supported by the weight of authority. But this is where there is "mere silence, without any affirmative act indicating an intention to affirm or tending to mislead the grantee into the belief of such intention, such as standing by and seeing improvements made, or sales of the property to others, without reclaiming the land." Prout v. Wiley, 28 Mich., 164.

There are not wanting, however, abundant authorities to the effect that a silent acquiescence for a considerable time by an infant after arriving at full age is of itself a ratification of his conveyance. 1 Parsons on Contracts, 326; Wallace v. Lewis, 4 Harring. (Del.), 75; Scott v. Buchanan, 11 Humph., 468. And it has been frequently asserted that an infant is bound expressly to disaffirm his

contract within a reasonable time after coming of age; and that if he neglects to do so, his silence will operate as an affirmance of his contract. See Wait's Actions and Defenses, vol. 7, p. 143, and the numerous cases cited. What is a reasonable time must be determined in view of the particular circumstances presented in the given case. Thompson *v.* Strickland, 52 Miss., 574.

This express disaffirmance seems, as we have seen, to be contemplated by the decisions in this state. Here the deed of the minor is not void. It is good against all the world but himself or his assignees. If he have received a consideration for it, he cannot disaffirm it without restoring or offering to restore it. His retention of the purchase money or property may well be considered an affirmative act showing an intention to affirm. And so, long silence and acquiescence may furnish conclusive evidence of ratification. It is in relation to the determination of the fact whether there has been a disaffirmance or a ratification that we must judge of the reasonableness of the lapse of time. Evidently the lapse of a few months or even years of silence or non-action might afford but indifferent proof of it. But the time ought not to be measured by any arbitrary rule. Difference of circumstances would affect the determination of the question. The facts of the present case afford an illustration. Here Elbert Scott, living near by Pegues, to whom he had conveyed the land, looked on for years while Pegues remained in the possession of it; saw him sell the land to others, who again dispose of it to other purchasers, and for nine or ten years made no sign of dissatisfaction and put up no claim to the land. Surely the reasonable assumption from this lapse of time is that he had abandoned all intention of reclaiming the land, and in effect ratified its sale. From 1861 to 1872 was an unreasonable time to slumber upon his rights, if he had any thought of asserting them. And the application of this rule of reason-

able time to this case would seem to be a more reasonable rule than any derived from the statute of limitations. The time fixed by the statute is taken in the cases we have referred to, rather as a measure of reasonable time than as an imperative rule. What if there were no law of limitation, or it had been suspended? Would the right of the minor to disaffirm, if he but kept his peace and remained silent, have continued forever?

The doctrine of reasonable time in which to disaffirm commends itself to our judgment. It is not the policy of the laws of this state to extend favor and indulgence to laches. Boys here become men owning and capable of managing property, precociously, and lands increase in value with surprising rapidity, and the country is fast filling up with new settlers seeking homes. Shorter periods of limitation are more needful to the welfare of the people than in other countries of slower growth. To apply the statute as the limit of time upon the minor's right on coming of age to avoid his deed, would unsettle titles, stimulate cupidity, and work only mischief. It could apply only where the land was occupied, and there could be little safety in determining the value of a title unaccompanied by possession. No man could be assured that he owned land unless he lived on it, if perchance his title was derived through a minor's deed, until the law of limitation perfected it through his possession.

We think the proper rule, that most in harmony with the decisions, and our circumstances in the conflict of authority upon this subject of the rights and duties of the minor, who, after coming of age, would avoid his deed of land made during his minority, is this: that he shall be held to do so within a reasonable time; that his silence or acquiescence beyond such reasonable time should conclude him from disaffirming it, and that what is a reasonable time is such a period as in view of the attending facts would rebut any presumption of an intended

disaffirmance.    The silence or non-claim of the minor for a considerable length of time, though less than the period of limitation for the recovery of lands, may as effectually prove his affirmance or ratification, in connection with the circumstances of the case, as his express acts or declarations to that effect.

Upon the whole case, looking to the charge of the judge in connection with the testimony, while we think it objectionable in failing to explain to the jury what was meant by reasonable time, leaving them to their own unguided conclusions upon the subject, we do not feel warranted in disturbing their verdict.    There is no reason to apprehend from the facts of the case that they were misled by it, considering it with reference to the great lapse of time occurring between Elbert Scott's arrival at majority and his reconveyance of the land.    The only charge asked by plaintiff upon the subject of reasonable time was that which was given, and the charge asked by him making the period of limitation the test of it was properly refused.

These views embrace all the points brought to our attention by the briefs of counsel, and are conclusive of the disposition of the case.

Upon the whole case, our conclusion is that the judgment ought to be affirmed.

AFFIRMED.

[Opinion delivered May 23, 1881.]