### M. S. WALLACE et al. vs. F. L. LATHAM et al.

52  291
80  746
80  749

1. ESTATE : *Distribution of. Deed by minor. Statute of limitations. Estoppel.*
An infant who makes a deed conveying realty has until such time as will complete the bar of the statute of limitations, after maturity, to disaffirm the deed, and bare *recognition* or *silent acquiescence* will not be regarded as a confirmation of the sale unless prolonged for the period required to bar him, and he will not be estopped. The rule between legatees, in the distribution of an estate, is that one who has not been paid cannot make those who have been paid refund, if the assets were originally sufficient to pay, unless the executor is insolvent; and the same principle applies to the distribution of an estate among heirs under like circumstances.

APPEAL from the Chancery Court of *DeSoto* County.

Hon. J. N. CAMPBELL, Chancellor.

The opinion of the court contains a very full statement of the case.

The errors assigned are :

1. That the chancellor erred in holding that the note sued on had been paid off and extinguished.

2. That the chancellor erred in denying the relief prayed, and in dismissing the bill.

*White & Chalmers*, for appellants.

The defense assumes two positions :

1. That Marietta C. S. Manning and her guardian are estopped from bringing this suit by reason of the quit-claim executed to McCain in 1860, and by their silence while he was engaged in

selling it to Messrs. Norris, Slack & Allen and during the inter-
vening years, and the sundry conveyances which it underwent.

2. That the note sued on has been satisfied and discharged
by the payment which McCain made on it, and by his purchase
of E. S. Manning's interest in the estate.

There is certainly nothing in the first proposition. There
was a statutory lien on the land for the deferred payments, as
shown by the commissioner's report. In tracing back the
title every purchaser was led to the commissioner's report, and
knew that the law gave a lien on the land for the purchase
money. Code, 1857, art. 152, p. 463. The quit-claim was
signed by Marietta Manning when she was eleven and a-half
years old, and was not binding, and was no protection to sub-
sequent purchasers. The chancellor held that she was not
estopped, but that the note had been paid. In the plea of
payment the burden is on the party asserting it. Marietta
C. S. Manning, late ward of J. A. Manning, is the holder and
*prima facie* the owner of the note sued on. The note was
made payable to J. A. Manning as guardian, thus dedicating
and setting it apart to her. All the balance of the estate is
gone. All the other heirs have been paid in full, except Mari-
etta and perhaps E. S. The latter has received $500, if not
more. Marietta, the minor girl, has gotten nothing.

Two things are ascertained :

1. The estate is all gone, save this note, and Marietta has
received nothing.

2. The note is in her possession, and is payable to her
guardian, which is the same thing as if payable to herself.

McCain can only claim what E. S. Manning could if in
court claiming it himself; he could only claim a *pro rata* with
his sister, he accounting for the $500 received. It is not possi-
ble for McCain to claim more.

It is insisted that McCain has paid off his note, and if Ma-
rietta has sustained any loss she must look to the commissioner
and his sureties. To this we reply that McCain, as the pur-
chaser of E. S. Manning's interest, is equally bound to be

remitted to the commissioner and his bondsmen. He must pay all that he owes, and then he and Marietta divide. Both must share alike, and upon this basis the account should be stated.

*Harris & George*, for appellees :

The bill seeks to subject lands to pay unpaid notes of McCain for the purchase money. The land is in the hands of remote vendees, purchasing in good faith and for value. Complainants rely upon the statutory lien in cases of guardians' sales, or Code, 1857, art. 59, p. 319.

The defense set up was that they were innocent purchasers for value ; that the note is paid by reason that the fund is debtor to McCain for his own share, or that of his wife, and for the share of E. S. Manning, owned by McCain ; that the several heirs or claimants of the fund had, by deed of release and quit-claim, discharged the land and McCain from the note ; that, though claimant was a minor at the date of her signing the quit-claim deed, she acquiesced for three years after attaining her majority. The case was tried upon an agreed state of facts.

The complainant Marietta arrived at her majority in 1869, and three years elapsed before bringing suit, and her guardian allowed twelve years to elapse and never attempted to collect the note. The quit-claim deed designed to free the property from all claims, to enable McCain to sell it. Commissioner made no deed to McCain, as appears. If sold under Code of 1857, art. 153, p. 464, a deed should have been made. If sold under art. 59, p. 319, the title was in the heirs until full payment was made. The quit-claim deed was not void, but voidable, and might be made binding by acquiescence, or delay, which is equivalent to it. There is no attempt to explain the delay in the bill, or in the proof. Zouch *v.* Parsons, 3 Burr, 1801 ; approved by Story, 1 Eq. Jur., § 241. The lapse of three years after majority estops the infant. Salmon *v.* Coatts, 5 Eng. L. & Eq., 93. There is a difference between disability of coverture and that of infancy. Ainsworth *v.*

Cordtz, 31 Miss., 32 ; Robb v. Halsey, 11 S. & M., 140. It is not sought to cancel the deed. The land has passed through several hands. The devoting or setting apart particular notes representing the general undivided fund is a pure assumption, when we look to the agreed case, which shows that they were given on the day of sale for lands sold for division.

The court, on any view of judicial duty in the premises, would require clear proof of assent by persons competent to assent. It is like a case where a testator directs certain legacies to be paid, and also directs land to be sold to raise the fund for their payment. The commissioner here, after the sale, occupied the position of an executor after sale. The rule is, without any exception, that where some legatees have been paid in full, and others not, the sole question in adjusting the rights of the claimants in any proceeding is, has any legatee obtained more than the law or the will gives him? If he has not, then he cannot be called to account directly or indirectly by any party ; all that can be said is that he has been diligent to get what belongs to him.

CAMPBELL, J., delivered the opinion of the court.

Reuben S. Manning died intestate, in DeSoto county, Mississippi, in 1858, leaving seven children and a large estate. J. A. Manning became administrator, and guardian of M. S. Manning and E. S. Manning, two of the seven children of decedent, and in due time applied to the probate court for an order to sell the interest of his said wards in the real estate of the deceased father. Upon proper proceedings the court ordered a sale of all of the real estate of Reuben S. Manning, deceased, and the proceeds to be divided among the several heirs of said decedent, viz., his said seven children. The said J. A. Manning was appointed commissioner by said decree to sell all the lands of the estate, with direction to divide the whole of the proceeds among the heirs. The lands were all sold by said J. A. Manning, in pursuance of the decree, on the 30th of January, 1860. The terms of the sale were one-third cash, one-

third payable in one year, and one-third in two years from day of sale, secured by notes of purchasers.   The land brought $20,570, and was purchased by several parties.   Among them J. H. McCain purchased certain parcels of land for $5,800, and as his wife was an heir of Reuben S. Manning, and entitled to $2,938.57 of the proceeds of said sale of land, her share was treated as so much cash paid by J. H. McCain, and it exceeded the one-third cash which McCain was to pay, and the excess was treated as a credit *pro tanto* on the note he gave for one-third of his bid, payable one year from said sale, leaving unpaid a balance of said note.   McCain executed for the one-third of his bid, payable two years from said sale, his note to "J. A. Manning, guardian," etc., for $1,950.

Said sale by Manning, commissioner, was duly reported to and confirmed by said probate court, and he was directed to divide the proceeds among the heirs.   McCain, immediately after his purchase, took possession of the land he bought, and soon afterwards (June 1, 1860) all of the heirs of Reuben S. Manning, except McCain's wife, executed to him a quit-claim deed relinquishing all claim on said land, and this deed was duly recorded in DeSoto county at once.   M. S. Manning was then under twelve years of age, having been born on the 24th of December, 1848.

Soon after this McCain sold 100 acres of the land he thus purchased to Mary A. Norris for $1,100, and he paid $732 of this money to J. A. Manning, commissioner.   This 100 acres passed by successive conveyances to Emma E. Pope, who held it when this bill was filed and is a party defendant. The other of said land purchased by McCain at said sale was by him sold the 1st of January, 1866, to certain persons, who paid part cash and gave notes for the balance, and a mortgage on the land to secure them, which mortgage McCain and wife afterwards enforced by decree and sale, at which Matthews purchased, who afterwards sold to defendant Latham, who sold a portion to defendant Bynum.   McCain and his vendees have been in continuous possession of said lands to the present

time.    Before the institution of this suit McCain had purchased
and continued to own all the interest of E. S. Manning, a son
of Reuben S. Manning, deceased, in said estate, and in the pro-
ceeds of the sale of said real estate, having acquired it by
transfer in 1866.    Prior to this E. S. Manning had received
$500 on account of his share of the money arising from the
sale of said real estate.    All of said $20,570 for which said
real estate of Reuben S. Manning, deceased, was sold has been
collected and distributed (it is assumed), except the said note of
J. H. McCain for $1,950, payable to J. A. Manning, guardian,
etc., 30th of January, 1862.

In 1871 J. A. Manning and his late ward, M. S. Manning,
exhibited their bill in the chancery court of DeSoto county, to
enforce the statutory lien of said note of J. H. McCain for
$1,950 and interest, against the said land which he purchased
at said sale, on the 30th of January, 1860.    The present hold-
ers of title to the land are before the court as respondents to
said bill.    Since the institution of this suit M. S. Manning has
married, and is now Mrs. Wallace.

The respondents claimed by their answers that complainants
were estopped by lapse of time and circumstances, and by the
quit-claim deed mentioned, and by silence when they should
have spoken, from enforcing the note against their land, and
that the note was virtually and equitably paid by reason of the
transfer to McCain of the interest and share of E. S. Manning
as aforesaid.    The chancellor made an interlocutory decree in
the case, by which he ascertained and declared that complainants
are not estopped as claimed by the answers, and that defend-
ants are not innocent purchasers without notice, and that com-
plainants are entitled to a decree for whatever sum may be due
on the note filed as an exhibit to their bill, and in default of
payment to have the statutory mortgage foreclosed by sale of
the lands (described in the bill) to satisfy the same ; but as the
court was not advised as to whom the amount due on the note,
if any is due, really belongs, or how much is due, it was ordered
that the cause be remanded to the rules for further proof as to

the interest of heirs in said note and as to the amount due thereon. After this an agreement was made as to the facts, and the cause was finally heard upon the state of case herein before presented by this opinion. The decree dismissed the bill, and from this decree complainants appealed.

The question of estoppel made by the answers was decided against respondents by the interlocutory decree, and correctly; for it is well settled that the infant who makes a deed conveying realty during infancy has until such time as will complete the bar of the statute of limitations, after the removal of disability, to disaffirm the deed, and that *bare recognition* or *silent acquiescence* will not be regarded as confirmation of the sale, unless prolonged for the period required to make the statute of limitations a bar, or under circumstances requiring the party to decide and act as to confirmation or disaffirmance. Tyler on Inf. and Cov., pp. 84, 85, *et seq.;* Thompson *v.* Strickland, at this term.

The decree dismissing the bill was clearly wrong. It was made on the assumption that McCain, by his purchase of the interest of E. S. Manning in the proceeds of the sale of the realty, became a creditor of the fund in the hands of J. A. Manning, commissioner, to an amount exceeding the indebtedness of McCain to the fund, and that therefore those in privity of estate with McCain are entitled to have the claim of McCain set off against the claim against him by reason of the note. This is not the correct view of the position and rights of parties. By his purchase of the share of E. S. Manning in the $20,570 McCain acquired, it is true, a right to call on J. A. Manning, commissioner, and custodian of the fund, for payment of whatever was due from that fund to E. S. Manning; but he did not acquire any right to this note for $1,950, as against M. S. Manning, the ward of J. A. Manning, to whom the note is on its face payable. The utmost extent of McCain's right as against that particular note is to be allowed to share in its proceeds in the proportion in which his assignor, E. S. Manning, could himself share in them. This brings us

to the question, in what proportion could E. S. Manning share in the proceeds of said note if himself claiming, and has he any claim to share at all? We think J. A. Manning is to be treated as a trustee of this note for both M. S. Manning and E. S. Manning, both of whom were his wards. The point of difficulty is in the fact that E. S. Manning had been paid $500 of the proceeds of the sale of land before his transfer of his interest to McCain, and the question arises whether these respondents, vendees of McCain, and invoking his equitable rights for their own protection against this note, are entitled to have said note treated as paid as to one-half of it, or as to one-half of it less $500 received by E. S. Manning, as aforesaid, before his transfer of it.

The doctrine of courts of equity as to the right of one legatee to make another refund is invoked, and it is claimed that the established principle in such cases is applicable to heirs entitled to share in the proceeds of sale of land by a commissioner, where one has been paid, in whole or in part, and another has not been. The rule between legatees is that one who has not been paid can not make those who have been paid refund, if the assets were originally sufficient to pay all, unless the executor is insolvent. Roper on Legacies, vol. 1, p. 459; Story's Eq. Jur., §§ 90, 91.

The reason is that, by paying one legacy, the executor has admitted assets for the payment of all, and the satisfied legatee, having received only what at the time he was entitled to, shall be allowed to keep what he got, protected by the principle *vigilantibus non dormientibus jura subveniunt.* Therefore the unsatisfied legatee is driven to his suit against the executor, unless he is insolvent, before he can call on legatees who were paid to refund. There is no just distinction in principle between legatees provided for by will and heirs deriving their right by law, and the rule applicable to legatees is, under like circumstances, applicable to heirs. In this case the subject of controversy is a note, which, as we have said, is held in trust for M. S. Manning and E. S. Manning. This note represents

all there is of a fund in which M. S. Manning (Mrs. Wallace) and the assignee of E. S. Manning are entitled to share in exact proportion to the amount due to each of that fund. The share of each in the whole fund ($20,570) is one-seventh, or $2,938.57. E. S. Manning, before he assigned his interest, had received from the fund $500, and after this the fund owed him $2,438.57. M. S. Manning had not been paid anything from this fund. There is, therefore, due her a full share, or $2,938.57, and she is entitled to share in the proceeds of the note of McCain in the proportion which $2,938.57, a full share, bears to $2,438.57, the amount due of the fund to E. S. Manning's assignee. Interest cannot be charged on the $500 received by E. S. Manning, for he got only what he had the right to receive, and is not accountable for it. It is chargeable to him, but without interest. Jackson v. Jackson, 28 Miss., 174.

The decree is reversed and the cause remanded, to be proceeded with in accordance with the views herein expressed.

CHALMERS, J., having been of counsel in this case, takes no part in its decision.