MRS. MARY JEPTHA WATSON v. W. B. PEEBLES ET AL.

[59 South. 881.]

1. INFANTS. *Removal of disabilities. Extent. Equitable estoppel. Conveyance. Disaffirmance. Contracts. Ratification.*

Where an infant's disabilities of minority were partially removed, the decree reciting that her disabilities "are removed to this extent and no further, that is to say, that she may sell and execute a good and valid binding conveyance," etc., and the decree further ordered that the sale be for cash or, if not for cash, then the purchaser should execute a deed of trust to secure the unpaid purchase money, and the proceeds of the

sale should be turned over to her guardian, and the property was sold to her brother who executed a deed of trust to secure the purchase money. Afterwards, before she came of age, she executed written authority to the trustee of this trust deed to cancel same, reciting that "same having been fully paid," and the trustee thereupon cancelled the trust deed, and her guardian charged herself with the amount, her account showing it had been paid, though in fact it had not been paid, and afterwards her brother executed a deed of trust on the property to another party to secure a note given by him and the third party assigned the note to a bank, and five years after the minor became of age she sought to cancel her deed and the trust deed given by her brother as a cloud upon her title or that the property be sold to satisfy the trust deed given her. *Held,* that plaintiff is not entitled to have her deed to her brother cancelled, nor is she entitled to have the trust deed executed by her brother and held by the bank cancelled, but she is entitled to a prior lien on the property, and to have the deed of trust executed to her by her brother to secure the purchase money of the land foreclosed, and the proceeds of the sale of the land applied so far as may be necessary to the payment of the amount due her by her brother on this purchase money.

2. SAME.

The partial removal of the disabilities of minority in this case did not empower the minor to receipt for the purchase money of the land sold by her to her brother, nor to cancel the deed of trust securing it. And she is entitled to have the same foreclosed even though the rights of innocent third parties will be affected thereby, unless she has been guilty of such fraudulent conduct as will make it inequitable for the court to do so and the facts of this case do not show such fraudulent conduct.

3. SAME.

Disaffirmance of a contract is the privilege which the law attaches to the condition of disability and of this right all men are bound to take notice.

4. SAME.

A minor has the full period of the statute of limitations after attaining majority within which to repudiate a contract made during infancy, and mere silence and inertness does not constitute a ratification of such a conrtact.

APPEAL from the chancery court of Lowndes county.

HON. J. F. McCOOL, Chancellor.

Suit by Mary Jeptha Watson against W. B. Peebles. From a decree dismissing the petition, plaintiff appeals.

In April, 1902, the appellant, who was then Mary Jeptha Harris, filed a petition, by her mother and next friend, in the chancery court, alleging that she was then eighteen years of age, and that it was to her best interest that she be made of age for the purpose of conveying certain real estate owned by her. The petition was granted—the decree reciting that her disabilities "are removed to this extent, and no further; that is to say, that she may sell and execute a good and valid binding conveyance." etc. The decree further ordered that the sale be for cash, or, if not for cash, then the purchaser should execute a deed of trust to secure the unpaid purchase money, and the proceeds of the sale should be turned over to her guardian (her mother). The property was sold to her brother, J. B. Harris, who executed a deed of trust to secure the unpaid purchase money. Afterwards, before she became of age, she executed written authority to the trustee in this deed of trust to cancel same, reciting that "same having been fully paid." The trustee thereupon canceled the deed of trust. Her guardian, in reporting to the chancery court, charges herself with the full amount of the purchase money; her account showing that it had been paid. Afterwards J. B. Harris executed a deed of trust on the property to W. B. Peebles to secure a note given by him. Peebles assigned the note and trust deed to the First State Bank.

Five years after appellant became of age and had married, she filed a petition in the chancery court, making Peebles, the bank, her brother, J. B. Harris, and the trustee in the instrument executed by her brother, parties defendant. The prayer of the petition was to cancel defendant's claim to the property as a cloud upon her title, with the alternative prayer that the property be

sold to satisfy complainant's lien thereon. On the hearing, the chancellor dismissed her petition, and she appeals.

*Z. P. Landrum,* for appellant.

In our view there is only one question in this case, and that is whether anything short of actual payment of the purchase money will estop complainant from asserting title. We do not think that the defense of *bona fide* purchaser for value can possibly be a defense to this suit. We do not think that all the niceties of notice cut any figure in the case. Defendants had notice that they were dealing with a minor's property and should have pursued every avenue of investigation which such knowledge opened to them. It was not enough that they should consult the record. The duty was upon them to go further and ascertain as a fact beyond question that the purchase money had in fact been paid. The testimony of the guardian and the complainant shows that, despite the record, not one dollar has ever been paid to this minor for this property. Further investigation on the part of the defendant's would have developed this fact. They are chargeable with actual knowledge of every fact which reasonable and diligent investigation would have revealed. As I have said they had knowledge that their hands were laid upon a minor's property, and having this knowledge they are justly chargeable with the knowledge of every fact of which the knowledge of minority should have put them upon inquiry.

But, as I have said, independently of questions of notice of the niceties of this equitable question, I maintain that nothing short of actual payment of the purchase money of this property to this minor will constitute an estoppel against her. The condition of minority would indeed be something woeful to contemplate if it were legally possible to divest a minor's interest in

realty by any such hocus pocus arrangement as was carried out in this case.

Consider the case a moment. I leave my infant child a home in my anxiety to shelter it as much as may be against the storms of adversity and want. While still a minor, my wife and adult sons for purposes of their own, conceive the plan of divesting the interest of this infant child in its home, and devoting the money value thereof to purposes alien to the interests of the infant. In order to do this it is necessary to remove the disabilities of minority of this child, and give it power to convey at the behest of its mother and adult brothers the whole property to one of the brothers. This is done, and there is a formal decree in which the interests of the child are safeguarded, it appears, in providing that the sale shall either be for cash, or the purchase money secured by trust deed on the property. Afterwards my wife, as guardian of my infant child, acknowledges that she has actually received the cash in payment of purchase price, and the infant child is persuaded to give written authority to the trustee to cancel the trust deed, which is done, and the property passes forever from the infant, except for the intervention of the court of equity. Can it be pretended that in equity and good conscience such a transaction should stand?

Under the statute, not now in the Code, administrators formerly were allowed to sell the land of decedents, but the statute safeguarded the interests of creditors and distributees by providing, just as this decree provided, that all such sales should either be for cash, or a trust deed taken on the property to secure the purchase money, and under this statute it has been decided that nothing short of actual payment, as provided by the statute, would entitle creditors and distributees to set up their interests in the land conveyed. *Upshaw* v. *Gibson,* 53 Miss.; —— 48 Miss. 255; *Hogatt* v. *Wade,* 10 S. & M. 143; *Elliott* v. *Connell,* 5 S. & M. 91.

*William Baldwin,* for appellee.

Here we have a trust deed payable to Mrs. Watson, who alone could order the trustee to mark it satisfied; and she does what?. She gives the trustee express written instruction to mark it satisfied, and not content with that instruction gives her reason for it, "it has been paid," and moreover now tells the court that "she did it to help her brother."

Here is an open, avowed statement of facts, made for the accomplishment of an admitted purpose, "to help her brother," and that purpose having been served, now tells the court that statement was not true. A stronger case of open, admitted wrong cannot be found in the books.

But to return to our supreme court: The later case of *Ferguson* v. *Bobo,* 54 Miss. 127:

"Two principles, equally ancient and well settled with respect to the contracts and liabilities of infants, and which as abstractly stated seems not antagonistic, have found in practice to produce two conflicting lines of decision, which it is difficult to reconcile, or rather it is difficult to determine satisfactorily where one ends and the other begins. 1st: The contracts of infants except for necessaries with which they have not been supplied by their guardians, impose no liability upon them which is not voidable at their election. 2nd: Infancy is a shield and not a sword, and cannot be set up to defeat liability for torts, trespass and frauds."

This court after discussing how the courts of law deal with this question, then turns to its treatment in the courts of equity and on page 133 of 54 Miss. we find, "Turning from courts of law to those of equity, we find the law of estoppel, as applicable to the contracts of infants, on a much more satisfactory and clearly defined footing. From the earliest times it has been held that infants will be estopped by a court of chancery from asserting title to property where either by their silence

·or active acquescence, they have entrapped persons into purchasing it from others, or into advancing money upon it." And this court goes on elaborating this doctrine, further emphasizing it. See especially bottom of page 134 of 54 Miss:

"It may be stated as a general proposition, fully borne out by the authorities, that whenever an infant who has arrived at years of discretion, by direct participation, or by silence, when he was called upon to speak, has entrapped a party, ignorant of his title or of his minority, into purchasing his property from another, he will be estopped in a court of chancery from setting up such title. Sugden on Vendors, 507, 508; *Watts* v. *Creswell,* 9 Vin. Abr. 415; *Cory* v. *Gertcken,* 2 Madd. 40, 46; 1 Story Eq. Jur., sec. 385; *Hall* v. *Timmons,* 2 Rich. Eq. 120; *Whittington* v. *Wright,* 9 Ga. 23; Herman on Estoppel, 416, and authorities there cited. How long before this doctrine will be fully adopted by courts of law, as so many equitable principles have been, the future history of our jurisprudence must determine."

It is submitted that a stronger case of an infant of years of discretion inducing a third party into lending money upon what she now contends was her property cannot be found, and doing it too for an openly avowed purpose, as she expresses it "to help her brother."

Here we have this infant of abundant years of discretion within only a few months of becoming of age, whose disabilities have been removed partially; we find her doing what?

Her brother wanted to borrow money on the lot he had purchased from her, and upon which she held a deed of trust. In order, as she says, "to help her brother," she does what? She instructs the trustee to mark the trust deed satisfied and accompanies that instruction to the trustee with the plain reason why it should be marked satisfied—because, as her statement to the trustee reads, "it has been fully paid." This being done,

the brother borrows money on the property, and now she wants the whole transaction ripped open, saying that what she had stated in writing to the trustee and upon which he, the trustee, acted, and others acted in "helping her brother," is untrue. Long before courts of equity existed, this proposition submitted to any man would have met his sternest rebuke. And surely a court of equity will have but one response to make to this appellant who comes into it with a plea for help. Boiled down to its last analysis, her proposition is this: I made a statement for the purpose of helping my brother, and did help him to get the money; now the court must help me.

But there is still another ground of estoppel that will firmly bind this appellant. A minor of years of discretion will not be permitted to perpetrate a wrong as this one now attempted.

Here we have a proceeding brought in a court of equity by an adult long years after she has become of age. Admitting as she does that she made a statement, and made for a purpose; that is, of helping her brother to do what otherwise he could not have done, by borrowing money on the lot, and then, after she becomes of age, not repudiating the transaction but waiting for almost five (5) years, and now after all that time has elapsed and the rights of third parties intervened, with not one word of repudiation of her of having the trust deed satisfied and making the written statement which appeared on the fact of the record of the trust deed that it had been paid, but keeping absolutely quiet for all these years, and when other parties have bought the notes of her brother, she now comes into a court of equity and asks for relief. No court on this earth will listen to such a claim.

It is earnestly submitted that even if she had not waited for so long a time—if she had not waited until other parties had bought the note of her brother, but

had she brought suit as soon as she became of age that she would have been estopped by her original wrong, and most certainly after the lapse of all these years after she became of age and after the rights of other parties have fastened, her claim is worse than hopeless for relief from any court.

SMITH, C. J., delivered the opinion of the court.

Appellant was not empowered by the decree partially removing her disabilities of minority to receipt for the purchase money of the land sold by her to her brother, nor to cancel, or to authorize the cancellation of the deed of trust securing it; consequently she is entitled to have this deed of trust foreclosed, even though the rights of innocent third parties will be affected thereby, unless she has been guilty of such fraudulent conduct as will make it inequitable for the court to permit her to do so. There is no pretense that the purchase money was in fact paid, or that she made any representations as to her age to any one, and it does not appear that she authorized the cancellation of the deed of trust with intent thereby to deceive or defraud any one; consequently she is not estopped from enforcing her security, but still has the legal right to do so. *Ferguson* v. *Bobo,* 54 Miss. 121; *Upshaw* v. *Gibson,* 53 Miss. 344; *Brantley* v. *Wolf,* 60 Miss. 420; *Ostrander* v. *Quin,* 84 Miss. 230, 36 South. 257, 105 Am. St. Rep. 426; *Commander* v. *Brazil,* 88 Miss. 668, 41 South. 497, 9 L. R. A. (N. S.) 1117.

The only evidence from which it is claimed that a fraudulent intent can be inferred is that contained in her answer to the following question propounded to her on direct examination: ''Have you any statement to make in regard to your signing such paper, or in regard to any other matter pertinent to this suit?'' Her answer was: ''I have no statement to make, except that I knew nothing of the nature of the business, as I only did it to help my brother.'' This evidence falls far short of proof that she had knowingly entered into a scheme to defraud ·

any one. It simply tends to show that she did not realize what she was doing. It may be that in one sense of the word it was wrong for her not to have inquired into the "nature of the business" before signing the instrument; but legal fraud cannot be predicated of her failure to do so, since such failure is "unmarked with any element of deceit or intentional wrong, because the right of disaffirmance is the privilege which the law attaches to the condition of disability, and of this right all men are bound to take notice." *Brantley* v. *Wolf,* 60 Miss. 430.

There is no merit in appellees' contention that appellant is now estopped to repudiate the cancellation of this deed of trust on account of her unreasonable delay, for the rule in this state is that, in the absence of peculiar circumstances rendering such delay unreasonable, a minor has the full period of the statute of limitations after attaining majority within which to repudiate a contract made during infancy. Mere silence and inertness does not constitute a ratification of such a contract. *Wallace* v. *Latham,* 52 Miss. 291; *Thompson* v. *Strickland,* 52 Miss. 574; *Brantley* v. *Wolf,* 60 Miss. 427; *Allen* v. *Poole,* 54 Miss. 330.

Appellant is not entitled to have the deed executed by her to her brother canceled, for she had the power under the decree partially removing her disabilities of minority to execute it; nor is she entitled to have the deed of trust executed by her brother to appellees canceled, for he had the right to execute this deed of trust; but she is entitled to a prior lien on the property, and to have the deed of trust executed to her by her brother to secure the purchase money of the land foreclosed, and the proceeds derived from the sale of the land applied, so far as may be necessary, to the payment of the amount due her by her brother on this purchase money.

The decree of the court below is reversed, and the cause remanded.

*Reversed and remanded.*